UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MICHAEL BOCANEGRA,

        Plaintiff,                         10-cv-13749
                                            HON. GEORGE CARAM STEEH

vs.


MICHAEL STACEY, et al.,

        Defendants.
-------------------------------------------------/

ORDER GRANTING DEFENDANT STACEY'S RULE 12(B) MOTION TO DISMISS
RICO CLAIMS, GRANTING DEFENDANT HUNTINGTON BANK'S MOTION TO
DISMISS COMPLAINT AND GRANTING DEFENDANT STACEY'S SUPPLEMENTAL
MOTION TO DISMISS MICHIGAN CONSUMER PROTECTION ACT CLAIM

I.  INTRODUCTION

Plaintiff, a Florida resident, purchased five properties in Detroit, Michigan from

defendant, First Mortgage Fund, Inc. (FMF) between October 14, 2004 through January

5, 2005.  Plaintiff filed the instant matter on September 20, 2010 alleging that defendants

FMF, Michael Stacey, FMF's president and principal shareholder, Exact Title LLC[1] and

Huntington National Bank (Huntington) violated the Racketeer Influenced and Corrupt

Organizations Act, 18 U.S.C. § 1961 et seq. (RICO) (counts I through IV), and the Michigan

Consumer Protection Act, MICH. COMP. LAWS § 445.901 et seq. (MCPA) (count V).  Plaintiff

further alleges a fraudulent concealment claim (count VI) against defendants FMF and

Stacey and a civil conspiracy claim (count VII) against all of the defendants stemming from

---

[1]  Exact Title LLC dissolved on June 3, 2008.

his purchase of the properties.

Defendants FMF and Stacey have filed a motion to dismiss or for summary judgment as to the complaint's RICO claims, a supplemental motion to dismiss the MCPA claim, and a motion to strike hearsay.[2]   Plaintiff has filed a motion to strike Rule 56(e) affidavit of Michael Stacey, a motion to strike Rule 56(e) affidavit of Sharon Singletree, and a motion to supplement exhibits to his response to defendants Stacey's and FMF's motion to dismiss or for summary judgment.   Defendant Huntington has also filed a motion to dismiss plaintiff's complaint.

## II.  FACTUAL BACKGROUND

Before ceasing active operations in April of 2008, one of FMF's business activities was purchasing, repairing and selling realty.  In early 2004, defendant Stacey and Sheldon Lubin, president of Real Financial LLC, entered into an agreement for Lubin to assist FMF in selling its properties by locating buyers like plaintiff.

In September of 2004, plaintiff was approached by Lubin about the possibility of various real estate investments in Detroit that were owned by FMF.  Lubin represented to plaintiff that FMF would make improvements to the properties and sell them to plaintiff in rentable condition and that 100% financing for all five properties would be arranged.  Lubin guaranteed that plaintiff "would receive at the time of purchase completely renovated homes suitable for rental to the public." Lubin further represented that after plaintiff

---

[2]  Subsequent to the filing of defendants Stacey's and FMF's pending motions, defendant FMF filed a notice of filing for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Eastern District of Michigan, petition number 11-44879-mbm. Accordingly, this court entered an order recognizing bankruptcy stay as to debtor-defendant FMF on September 22, 2011. See Dkt.# 34.  Therefore, the court is without jurisdiction to resolve defendant FMF's pending motion.

purchased the properties "each home would be rented and managed on his behalf by KBB Lydia, LLC, who would in turn collect rents on [plaintiff]'s behalf and forward him the proceeds."

Appraisal services for the properties were provided by David Wiley of A&S Appraisal Group, Inc.  The properties were appraised by Wiley for amounts between $90,000.00 and $130,000.00  Based on Lubin's representations and the appraisals, plaintiff decided to purchase the properties and orally agreed to purchase them, however he never entered into a written purchase agreement with FMF.  Plaintiff claims that the properties' values were grossly overestimated.

Plaintiff purchased the five properties between October 12, 2004 and January 4, 2005.  At the closing on each property, plaintiff signed mortgage documents securing financing for the homes he was purchasing.  He was not provided any HUD-1 settlement statements, nor any purchase agreements.  He was informed that all of the closing documents would be made available to him at a later date.

Several months after closing on the purchase of the five properties, plaintiff became aware that the property appraisals for some of the houses were inaccurate; representing them to be in good condition when in fact they were in need of renovations or were in disrepair.  Plaintiff contacted defendant Stacey in May of 2005 about repairs that were needed.  Stacey agreed to make some of the repairs on the properties.

Plaintiff made five requests for the closing documents, however Exact Title did not provide them to him until September 27, 2006.  He was not provided the HUD-1 forms for each of the five properties until October of 2006.  The only signed HUD form was the December 14, 2004 form for the 9490 Beaconsfield property, and plaintiff asserts that his

forged signature appears on that form.

The closing documents received by plaintiff on September 27, 2006 included falsified cashier's checks indicating plaintiff had made down payments toward the purchase of the properties. The bank checks were authorized and drawn from defendant Huntington on the account of FMF. However, plaintiff never made any down payments for the purchase of the properties. Plaintiff believes that defendants presented the falsified checks to the financing banks in order to deceive the banks financing plaintiff's purchases of the properties so it appeared that plaintiff was paying a portion of the total purchase price. Plaintiff argues that it was not until his receipt of the closing documents in September of 2006 that he realized something was amiss concerning his purchase of the properties.

### III. ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. See Fed. R. Civ. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citing Conley v. Gibson, 355 U.S. 41, 47 (1957). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Bell Atlantic, 550

U.S. at 555).

The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citations and quotations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" Id. at 1950.

The district court generally reviews only the allegations set forth in the complaint in determining on whether to grant a Rule 12(b)(6) motion to dismiss, however "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account. Amini v. Oberlin College, 259 F. 3d 493, 502 (6th Cir. 2001). Documents attached to a defendant's "motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." Id.

B.  Defendants Stacey's and Huntington's 12(b)(6) Motions to Dismiss RICO Claims[3]

Section 1962(c) of Title 18 of the United States Code provides that:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. 1962(c). To prevail on a RICO cause of action, plaintiff must establish "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Moon v. Harrison Piping Supply, 465 F. 3d 719, 723 (6th Cir. 2006) (quoting Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985)). "Racketeering activity" is any act that is indictable under certain enumerated federal criminal statutes.  18 U.S.C. § 1961(1)(B); Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n, 176 F. 3d 315, 322 (6th Cir. 1999).  RICO requires at least two acts of racketeering activity within a period of ten years. See 18 U.S.C. § 1961(5). Defendant Huntington argues that plaintiff has failed to allege a valid RICO "enterprise," or that defendant Huntington committed any indictable offense under RICO.  Defendant Stacey argues that plaintiff has failed to allege a "pattern of racketeering activity."

1.      Enterprise

An "enterprise" includes "any individual, partnership, corporation, association, or

---

[3]  Because the court concludes that plaintiff has failed to state a RICO claim under Rule 12(b)(6), it declines to address defendants' alternate argument that summary judgment is appropriate because plaintiff's complaint is untimely under the applicable statute of limitations.  Similarly, plaintiff's motions to strike the Rule 56(e) affidavits of Michael Stacey [#20] and Sharon Singletree [#22] are MOOT.

legal entity, and union or group of individuals associated in fact although not a legal entity."
18 U.S.C. § 1961(4).   Therefore, an enterprise under RICO "encompasses both legal
entities and illegitimate associations-in-fact."  Russello v. United States, 464 U.S. 16, 24
(1983).   The Supreme Court clarified the standard for finding an association-in-fact
enterprise in Boyle v. United States, 129 S. Ct. 2237 (2009).  Specifically, the Supreme
Court held that an association-in-fact enterprise must have three structural features: "a
purpose, relationships among those associated with the enterprise, and longevity sufficient
to permit these associates to pursue the enterprise's purpose."  Id. at 1276.  However, the
group need not "have a hierarchical structure or a 'chain of command';  . . . a name, regular
meetings, [or] dues."  Id. at 2245.   The group "must function as a continuing unit and
remain in existence long enough to pursue a course of conduct . . . ."  Id.

Plaintiff has failed to allege that Huntington is associated in fact with the alleged
enterprise FMF.   The complaint states that defendant Huntington "is associated with the
Racketeering Act enterprise of" FMF.   Plaintiff does not allege how Huntington has a
relationship among the other members of the enterprise, and that longevity exists sufficient
to permit Huntington and FMF's other associates to pursue FMF's purpose.  See Boyle,
129 S. Ct. at 1276.   Plaintiff has failed to state a RICO claim against Huntington.

2.      Pattern of Racketeering Activity

Plaintiff's RICO claim also fails as to defendant Stacey because  plaintiff's complaint
fails to identify a "pattern of racketeering activity."  "Racketeering activity" is any act that is
"indictable" under certain enumerated federal criminal statutes.  18 U.S.C.  § 1961(1)(B);
Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n, 176 F. 3d 315, 322 (6th Cir.

1999).  Under RICO, at least two acts of racketeering activity must occur within a period of ten years.  See 18 U.S.C. § 1961(5). However, "while two predicate acts are necessary, they may not be sufficient" to establish a pattern of racketeering activity.   H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 237 (1989).

A "pattern of racketeering activity" is demonstrated by continuity of racketeering activity or the threat of continued racketeering activity. Id. at 241.   "In addition to 'relatedness,'the predicate acts pleaded must have sufficient 'continuity.'" Moon, 465 F. 3d at 724.   The Supreme Court defines continuity as "both a closed and open ended concept, referring either to a closed period of repeated conduct that by its nature projects into the future with a threat of repetition." H.J. Inc., 492 U.S. at 241-42.   A party demonstrates closed ended continuity "by proving a series of related predicates extending over a substantial period of time." Id. at 242. "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." Id.; see also, Moon, 465 F. 3d at 724-25 (predicate acts spanning 9 months insufficient to demonstrate a pattern of racketeering activity).  "Open-ended" continuity is "past conduct that by its nature projects into the future with a threat of repetition." H.J. Inc., 429 U.S. at 241.

Plaintiff argues that he has alleged indictable offenses, specifically mail fraud, 18 U.S.C. § 1341, wire fraud, 18 U.S.C. § 1343, and financial institution fraud, 18 U.S.C.  § 1344.  Plaintiff further argues that the complaint alleges both 'closed ended' and 'open ended' continuity of the related predicated acts.   Plaintiff argues that the fraudulent and conspiratorial conduct directed at plaintiff lasted at least until October of 2006 when he was

provided the HUD-1 forms. Therefore, defendants conduct extended no less than twenty-six (26) months, from September of 2004 through October of 2006, which is sufficient to demonstrate 'closed-ended' continuity.

Defendant Stacey counters that the complaint fails to allege that he had any control over when Exact Title sent the closing documents to plaintiff. Assuming without deciding that the alleged predicate acts of defendant are indictable, specifically placing false information on five mortgage applications regarding the source of down payment funds, and using false and highly inflated appraisals to increase the purchase price of the properties, these predicate acts span a relatively short period of time, between October of 2004 through January of 2005.

To establish closed ended continuity, plaintiff relies on defendant Stacey's entry of a guilty plea to count I of an Indictment charging him with violating 18 U.S.C. § 1343, wire fraud, in case number 10-20153.[4] In pleading guilty, defendant Stacey admitted that, from January 2005 through July of 2005, he withdrew funds from accounts he controlled and "purchase[d] official checks in amounts equal to the down payment for each property. Each check would falsely identify the purchaser of the property as the remititur of the check to disguise the fact that defendant MICHAEL STACEY, the seller of the properties, was the source of the down payment funds."

---

[4] On December 1, 2010, plaintiff filed a motion to supplement exhibits in support of his opposition to defendants' motion for summary judgment. See Dkt.# 24. Plaintiff seeks to supplement his response with two exhibits: (1) The Indictment and subsequent (2) Rule 11 plea agreement of defendant Michael Stacey. The court GRANTS plaintiff's motion to supplement, however as discussed, this evidence does not remedy the complaint's lack of supporting facts demonstrating the continuity needed for a "pattern of racketeering activity."

Assuming that the acts for which he pled guilty to, and those alleged herein are related predicate acts, this only extends the pattern of racketeering activity a mere six months for a total period of ten months (September of 2004 through July of 2005).  This does not amount to a "substantial period of time" to establish closed ended continuity.  See Moon, 465 F. 3d at 724-25 ("Although there are no rigid rules regarding what amounts to a 'substantial period of time,' racketeering activity lasting only 'a few weeks or months and threatening no future criminal conduct' is insufficient."); see also, Vemco, Inc. v. Camardella, 23 F. 3d 129, 134 (6th Cir. 1994), cert. denied, 513 U.S. 1017 (1994) (predicate acts spanning seventeen months insufficient to show continuity.)

Plaintiff also relies on the case of Repasky v. Lubin, case number 06-11146,[5] which contains allegations similar to those of this plaintiff against Stacey and FMF, concerning events occurring from September of 2004 through December of 2004. Repasky was dismissed five and a half months after it was filed for a failure to prosecute because service upon the named defendants had not occurred at that point in the proceedings.  Unsworn allegations in Repasky cannot be used as evidence of related predicate acts demonstrating a pattern of racketeering activity.  See n. 4. In any event, if the court were to rely on Repasky, as well as defendant Stacey's conviction for wire fraud in case number 10-20153,

---

[5] On December 10, 2010, defendants filed a motion to strike hearsay. See Dkt. #26. Specifically, plaintiff's response uses the case of *Repasky v. Lubin, supra,* as evidence of defendants' wrongful conduct. *Repasky* was dismissed five and a half months after its filing, with no responsive pleading having been filed.  The court cannot rely on the allegations in the *Repasky* complaint as evidence to support plaintiff's claims as the *Repasky* allegations are hearsay. *See Rivera v. Metro Transit Auth.*, 2010 U.S. Dist. LEXIS 120289, *6-7 (S.D.N.Y. 2010) ("An unsworn statement by a non-party in a complaint in another lawsuit is hearsay when offered to prove the truth of that statement.  It is not admissible).  Therefore, the court GRANTS defendant Stacey's motion to strike hearsay.

events taking place from September of 2004 through July of 2005, these alleged predicate acts do not establish closed ended continuity as they span a period of ten months, which is insufficient to show predicate acts extending over a substantial period of time.  See Moon, 465 F. 3d at 724-25; see also, Lind v. New Hope Prop., LLC, No. 09-3757, 2010 U.S. Dist. LEXIS 36672, *17-18, n. 19 (D.N.J. April 13, 2010) ("[C]onduct lasting no more than twelve months d[oes] not meet the standard for closed-ended continuity.")

Additionally, plaintiff has not presented sufficient facts to support that the alleged scheme involves open ended continuity.  In order to plead open ended continuity, plaintiff must allege facts demonstrating "a distinct threat of long-term racketeering activity," or by demonstrating "that the predicate acts or offenses are part of an ongoing entity's regular way of doing business."  Moon, 465 F. 3d at 726-27 (quoting H.J. Inc., 492 U.S. at 242.).  Here, FMF is no longer engaging in active business and is presently in Chapter 7 bankruptcy proceedings, Stacey has entered into a Rule 11 plea agreement and will be sentenced on November 29, 2011 in case number 10-20153.  Exact Title is defunct and Lubin, who initiated the sale of the properties to plaintiff, is deceased.  Plaintiff has failed to allege facts suggesting this scheme involves a distinct threat of long term racketeering activity.  Moon, 465 F. 3d at 726-27.  Therefore, for the foregoing reasons plaintiff has failed to state a RICO claim because he has not alleged sufficient facts that defendants engaged in a pattern of racketeering activity.

Therefore, for the foregoing reasons plaintiff has failed to state a RICO claim against defendants Stacey and Huntington.

3.      RICO Conspiracy Claim (Count IV)

As plaintiff has not set forth the requisite factual allegations to support a RICO claim, his conspiracy claim under RICO also fails as a matter of law.  See Craigshead v. EF Hutton & Co., 899 F. 2d 485, 495 (6th Cir. 1989) ("Plaintiffs' conspiracy claim cannot stand in light of the dismissal of their other RICO counts."); AK Steel Corp. v. USW, 2002 U.S. Dist. LEXIS 19676, *24 (S.D. Ohio 2002) ("A conspiracy claim under 18 U.S.C. § 1962(d) cannot survive a motion to dismiss if the pleadings do not also state a substantive RICO claim for which relief may be granted.").  Plaintiff's RICO conspiracy claim is also dismissed against defendants Stacey and Huntington.

C)   Defendant Stacey's Supplemental Motion to Dismiss Plaintiff's MCPA claim[6]

The Michigan Consumer Protection Act is a "remedial statutory scheme designed to prohibit unfair practices in trade or commerce . . . ."  Newton v. Bank West, 262 Mich. App. 434, 437; 686 N.W. 2d 491 (2004).  The MCPA exempts "transaction[s] or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States."  MICH. COMP. LAWS § 445.904(1)(a).  "The relevant inquiry is not whether the specific misconduct alleged by the plaintiffs is 'specifically authorized.'   Rather, it is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct is prohibited."  Newton v. Bank West, 262 Mich. App. at 438 (citing Smith v. Global Life Ins. Co., 460 Mich. 446 (1999)).

Defendant Stacey maintains that all of plaintiff's allegations concern his involvement

---

[6]   Huntington also argued in its motion to dismiss that plaintiff's MCPA claim should be dismissed.   In his response, plaintiff concedes that Huntington's conduct is exempted under the MCPA.   Therefore, plaintiff's MCPA claim against Huntington is dismissed.  See Newton v. Bank West, 262 Mich. App. 437, 439 (2004).

with the "residential mortgage loan transactions," a process which involves conduct in a regulated industry, therefore the MCPA exempts the conduct at issue in this matter. Plaintiff counters that the complaint contains additional allegations that do not relate to the "residential mortgage loan transactions" and are solely related to the sale of residential real estate, which is not exempt from the MCPA.

A review of the complaint demonstrates that most of plaintiff's allegations concern the residential mortgage loan transactions, which are exempt from the MCPA. Newton, 262 Mich. App. at 438. However, some of the plaintiff's allegations concern solely the sale of the five residential properties to plaintiff. For instance, plaintiff alleged that "[o]n at least one occasion prior to the sale of the properties to Bocanegra, Defendant Stacey along with non-defendants Lubin and Robert Wiley . . . and possibly other parties met to create a scheme to inflate the appraisals for First Mortgage Fund's properties so that they could be sold for a greater profit to individuals like Bocanegra." Plaintiff further alleged that "Stacey and FMF obtained inflated and falsified appraisals . . . for the sole purpose of selling properties and obtaining money from Bocanegra."

Plaintiff is correct that Michigan courts have held the MCPA applicable to business activity related to residential home sales. Attorney General v. Diamond Mortgage Co., 414 Mich. 603, 617; 327 N.W.2d 805 (1982). In Diamond, the Michigan Supreme Court found that real estate brokers were not exempt from the MCPA in instances where the real estate broker is engaged in activities not specifically authorized by his or her license. Id. In Smith, 460 Mich. at 464, the court explained, based on its holding in Diamond Mortgage:

> The focus is on whether the transaction at issue, not the alleged misconduct, is 'specifically authorized.' Thus, the defendant in Diamond Mortgage was not

exempt from the MCPA because the transaction at issue, mortgage writing, was not 'specifically authorized' under the defendant's real estate broker's license. . . .The activities of the defendant in Diamond which the plaintiffs there were complaining of were not subject to any regulation under the real estate broker's license of the defendant and thus such conduct was not reviewable by the applicable licensing or regulatory authority[]

Smith, 460 Mich. at 464-65.  The Smith court held that the test to employ in determining the applicability of the MCPA focused on "whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." Id. Here, the sale of the properties by defendant Stacey was subject to the law regulating real estate brokers.  Stacey engaged the services of Sheldon Lubin, a real estate broker and there can be no dispute that Mr. Lubin was subject to the law governing real estate brokers, salespersons and activities.  See Mich. Comp. Laws § 339.2501(h); Diamond Mortgage Co., 414 Mich. at 617. Michigan Administrative Code Regulation 339.22319(1), states in relevant part:

> Licensure as a real estate broker is required of an owner of real estate who engages in the sale of real estate as a principal vocation, *unless the owner engages the services of a real estate broker*.
>
> Acts constituting a principal vocation include any of the following:
>
> (a) Engaging in more than 5 real estate sales in any 12-month period.

Mich. Admin. Code R. 339.22319(1). Accordingly, the underlying transaction-sale of the properties- was authorized under the law of the state.  Plaintiff's MCPA claim (count V) is dismissed against defendant Stacey.

### D)  Civil Conspiracy Claim (Count VII)

Plaintiff also asserts a civil conspiracy claim against all of the defendants.    In its

-14-

motion to dismiss, Huntington argues that without an underlying tort, the plaintiff cannot state a claim for civil conspiracy.   A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a lawful purpose by criminal or unlawful means.  Admiral Ins. Co. v. Columbia Casualty Ins. Co., 194 Mich. App. 300, 313; 486 N.W.2d 351 (1992). "[A] claim for civil conspiracy cannot exist in the air; rather, it is necessary to prove a separate, actionable tort."   See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n, 257 Mich. App. 365, 384; 670 N.W. 2d 569 (2003); Early Detection Ctr., P.C. v. New York Life Ins. Co., 157 Mich. App. 618; 403 N.W. 2d 830 (1986).   Therefore, as the court concludes that plaintiff fails to allege a RICO claim against defendant Huntington, the civil conspiracy claim must also be dismissed.  Advocacy Org. for Patients & Providers, 157 Mich. App. at 384.

## V.  CONCLUSION

Accordingly,

Defendant Michael Stacey's motion to dismiss RICO claims [#3] is GRANTED as to Michael Stacey only.

Defendant Huntington's motion to dismiss plaintiff's complaint [#9] is GRANTED. Defendant Huntington is dismissed from this cause of action.

Defendant Stacey's supplemental motion to dismiss Count V (MCPA) [#13] is GRANTED as to Michael Stacey only.

Counts I through V are dismissed from this action as against named defendants other than FMF.  All counts stated against FMF remain in light of the bankruptcy stay.

Counts VI and VII remain against defendant Stacey.

Plaintiff's motion to strike Rule 56(e) affidavit of Michael Stacey [#20] is MOOT.

Plaintiff's motion to strike Rule 56(e) affidavit of Sharon Singletree [#22] is MOOT.

Plaintiff's motion to supplement [#24] is GRANTED.

Defendant Michael Stacey's motion to strike hearsay [#26] is GRANTED.

SO ORDERED.

Dated: September 26, 2011

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
September 26, 2011, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk